## KIMBALL *v.* MILFORD.

If a railroad corporation, situated in another state, pays a specific tax upon all its capital invested or expended, whether represented by capital stock or indebtedness of the corporation, and such taxation is declared to be in lieu of all state, county, township, or other taxes in that state, and it appears that such specific tax was intended to be a fair equivalent for the taxes that would otherwise be laid on such property by the ordinary means of taxation, such property should not again be taxed in this state to the owners of shares of the capital stock of such corporation.

PETITION for abatement of tax, by John Kimball, against the town of Milford.  The petitioner resided in said town April 1, 1873, and owned ten shares of the capital stock of the Michigan Central Railroad, a corporation created by the laws of Michigan, and with its railroad wholly located in that state.  The selectmen of Milford assessed a tax of $15.50 on said shares against the petitioner as of that day.  The petitioner offers to prove that he in all respects complied with the laws in respect to giving in his invoice of taxable property for that year, duly applied to said selectmen to abate said tax on the ground that the shares were not liable to taxation here, and informed them that they were subject to taxation, and were taxed for that year, in Michigan, under the laws of that state.  The selectmen refused to make the abatement, and therefore this petition was filed.  A tax was assessed upon said shares against the corporation for said year, and paid, in conformity with the provisions of the charter of said corporation, approved March 28, 1846, and of the compiled laws of Michigan, vol. 1, ch. 22, being ch. 21 of the Revised Statutes of Michigan of 1846, and no tax in any other form was assessed on the shares in that state.  Either party may refer to the provisions of the charter, and of the constitu-

tion and laws of Michigan bearing upon the question arising upon said petition. The petition is to be dismissed, or the tax abated, or other order made, according to the opinion of the court upon the foregoing facts.

Case reserved.

*G. Y. Sawyer & Sawyer, Jr.*, for the petitioner.

The Michigan Central Railroad was incorporated by act of the legislature of that state, approved March 28, 1846 ; and sec. 33 of its charter declares that the corporation, "after February 1, 1851, shall pay to the state an annual tax of three fourths of one per cent. upon its capital stock paid in, including the two millions of purchase-money paid to the state, and also upon all loans made to said company for the purpose of constructing its road, or purchasing, constructing, chartering, or hiring steamboats, * * * and the property and effects of said company, whether real, personal, or mixed, shall, in consideration thereof, be exempt from all and any tax, charge, or exaction, by virtue of any law of this state, now or hereafter to be in force, except penalties by this act imposed." In sec. 39 the right is reserved to the state to alter, amend, or repeal the charter, at any time after thirty years from its passage, by a vote of two thirds of each branch of the legislature.

This mode of taxing railroad property by specific tax on the capital paid in, whether represented by the shares or the debts of the corporation, was adopted in Michigan, by act of 1855, Comp. Stats. of Michigan of 1872, ch. 75, p. 744, for all railroad and certain other corporations with a similar exemption from other taxation. The constitution of Michigan recognizes and authorizes the distinction in taxation between the general mass of property to be subjected to a uniform rate of assessment and a specific tax, in lieu of all other, upon the property of banking, railroad, plank road, and other corporations. Thus, art. 14, sec. 1, prescribes the way in which specific taxes shall be applied ; sec. 10 authorizes the collection of specific taxes accruing under existing laws, and empowers the legislature to make provision for the collection of specific taxes from railroad and other corporations created after the adoption of the constitution ; and sec. 11 declares that the legislature shall provide a uniform rate of taxation " except on property paying specific taxes." And the legislature have provided such uniform rate—Comp. Stats., title 8, p. 359—by enacting, ch. 21, sec. 1, that all property, real and personal, not expressly exempted, shall be subject to taxation ; sec. 14, that inventories be taken upon which the taxes are to be assessed; sec. 15, that the inventories shall set forth, under fourteen different heads, the various classes of personal property ; and sec. 17, that the shares of any corporation required to pay a specific tax shall not be included in the inventory. It is clear, we submit, that this specific tax is regarded under the legislation in Michigan as a tax on the shares to the owner; and, at the rate of three fourths of one per cent. on all moneys invested in the railroad, regardless of depreciation

and fluctuations in the market value of the stock, is at least equal to the average rate of taxation on property generally in this state from 1851 to 1863.

Such a tax of one per cent. on deposits in savings banks, established in 1869 as the fixed policy of this state, even under the present burdensome taxation, is under our legislation regarded as a fair and full tax on the deposit as money at interest. In fixing the per cent. for such certain tax on the whole amount invested for a series of years, to make it as near as may be uniform with the rate at which the general mass of property is taxed, sound policy would seem to dictate that the probable depreciation and prospective fluctuations in the market value of the property should be considered. Notwithstanding the slight uncertainty which the corruption of the times, creeping here and there into the management of savings institutions, may have thrown upon the market value of savings banks deposits, it is surely safe to claim that they are more stable in character, subject to less of fluctuation and uncertainty, and of higher value, on the whole, in the market, in proportion to their par value, than railroad stocks; and that a certain fixed tax of three fourths of one per cent., for a series of years, on the entire amount expended in the construction of railroads, is a higher rate of taxation, in comparison with an *ad valorem* tax on the same property, than is one per cent. on the amount deposited in savings banks in comparison with a tax assessed according to its market value. The settled policy of Michigan, for more than twenty years, has been to tax the money invested in railroad and certain other corporations at a fixed and definite rate. It must be assumed that three fourths of one per cent. for the twenty-four years that taxation at that rate upon the whole money expended in this railroad has been imposed upon it, is a fair and full equivalent for a tax upon its appraised value from year to year. The mere accident of the temporary increase of the rate of taxation, by reason of war expenses, ought not to be permitted to enter into the account.

The settled policy of this state is to tax railroad and manufacturing shares, and deposits in savings banks, directly to the corporation, and in case of savings banks, by a specific tax at a fixed and certain rate, year after year, precisely as in the case of railroad shares in Michigan. Under our constitution, which requires all taxes to be proportionate upon all inhabitants and estates, such tax can be justified only upon the ground that the rate renders it a fair and full tax in proportion to that on the general mass of property. It is quite evident that our legislature did not deem the advanced rate at which the general mass must necessarily be assessed by reason of the temporary burdens left by the rebellion, as a proper element of computation in adjusting the fixed rate for deposits. Here, then, we have, as in Michigan, two modes of taxation, one upon the mass of property at its valuation, the other upon certain property at a fixed and definite rate, which in our case, at one per cent. on deposits during the six years past, when property here has been excessively burdened by the necessity for extraordinary

taxation, is nevertheless a fair equivalent for a tax *ad valorem.* On what ground can it be said that the three fourths of one per cent., as the rate of taxation for railroad property in Michigan, is not, for the twenty-four years that this corporation has been so taxed, a fair and full equivalent for an *ad valorem* tax on its property for that period ?

We contend that this tax so assessed in Michigan against the corporation is an assessment and tax " to the petitioner by the town where the corporation is located," as those terms in the third clause of sec. 5, ch. 49, Gen. Stats., are to be understood. This clause is merely a reënactment of sec. 1, ch. 1419, of the laws of 1853, which was in force when the General Statutes were adopted. In the original act the language is,—"All bank, railroad and other stock in corporations located out of the state shall be taxed when owned by citizens of the state which is not taxed to the owners by the towns or cities where the corporations are located." In the Gen. Stats. more briefly,—" Stock in corporations located out of the state owned by persons living in the state," &c. The original act mentions specifically " bank, railroad, and other corporations," such as manufacturing corporations, which, as well as banks, have a fixed location in some town or city. In its application to railroad corporations, the word town or city, as used in the statute, is to be construed " place incorporated, or whose inhabitants are required to pay any tax "—Gen. Stats., ch. 1, sec. 5. So construed, it means the state of Michigan as the place whose inhabitants are required to pay a tax, and in which the subject-matter referred to —the Michigan Central Railroad—is located. The same provision in respect to the construction to be given to the word " town " or " city " was contained in the Revised Statutes, and was in force in 1853, when the original act, ch. 1419, was passed. This third clause, in its application to this case, is to be read as declaring *in hæc verba,*—"Stock in the Michigan Central Railroad owned here, is to be taxed here if not taxed by the state of Michigan."

So, too, the tax is one " to the owner " and " on his stock," as those terms in the third clause are to be understood. The phrase " taxed to the owner," as here used, cannot mean a tax assessed in Michigan against the owner here, in the sense of a tax to him as a citizen of that state, for which his body could be arrested or his chattels distrained. Such a tax would be a nullity, because he is not within the jurisdiction to be taxed there personally. It must therefore mean a tax, the burden of which is to rest upon him or his property,—in effect, a charge upon his shares, and in that sense a tax to him and upon the shares. By sec. 7, ch. 49, Gen. Stats., it is declared that " no statute provision shall be so construed as to subject any stock to double taxation." This provision was first enacted in the act of 1853, ch. 1419, with special reference to the provision contained in the first section for taxing shares in foreign corporations owned here, the second section providing that " neither this act " nor other laws of the state should be so construed. To tax the whole corporate property to the corporation, and then the whole of the shares to the owners, would clearly be a case of double

taxation. On this ground, shares in railroad and manufacturing corpo-
rations and deposits in savings banks are exempted from taxation to
the shareholders and depositors.   Is it any the less a double taxation,
except only as to the extent to which it is carried, when, the whole
property being taxed to the corporation, ten shares representing a pro-
portionate part of the property are taxed to the owner ?   We submit
that there is no way of subjecting shares in a foreign corporation owned
here to double taxation here, but by taxing the shares to the owner
here, when its property is taxed where it is located ; or its shares taxed
there and the corporation required to pay, or the tax there made a lien
on the shares.   In such case, the shares owned here would be subject
to two burdens, the double taxation which sec. 7, ch. 49, forbids,—
first, the tax there on the corporate property or shares resting equally
on resident and non-resident owners; and second, the tax on the shares
owned here, from which all owners of shares elsewhere would be ex-
empt.   *Smith* v. *Exeter*, 37 N. H. 556.

*Wadleigh & Wallace*, for the defendants.

The General Statutes, in clear and unmistakable terms, require the
taxation of " stock in corporations located out of the state, which is
not assessed and taxed to the individuals owning the same, by the
towns where the corporations are located."   Ch. 49, sec. 6, p. 116.

The act of 1853, which is misquoted in the petitioner's brief, was
equally explicit, and required the taxation of all " stocks in corpora-
tions located out of this state and owned by persons living in this
state, which is not by the towns and cities where such corporations
were located, assessed, and taxed to the individuals owning the same "
—Laws of 1853, ch. 1419, sec. 1 ; that the petitioner's stock was not
assessed and taxed to him in Michigan seems too clear for argument.
To contend that it was, requires such ingenuity as proves a horse-
chestnut to be a chestnut horse.

The only tax levied upon the Michigan Central Railroad or its stock
in the state of Michigan, was under the provisions of the Comp. Laws
of 1872, vol. 1, ch. 22, which are as follows :

"Sec. 5. Every company heretofore incorporated or hereafter to be
incorporated within this state, for the purpose of constructing or using
any railroad, canal, or turnpike therein, shall pay a yearly tax to the
state of three fourths of one per cent. on the amount of capital stock
of such company paid in or secured to be paid, which tax shall be paid
into the state treasury by said corporations respectively on or before the
first Monday in October, in the year one thousand eight hundred and
forty-seven, and in each year thereafter.   Sec. 6. Such tax shall be in
lieu of all state, county, township, or other taxes in this state on the
capital stock of said corporations, and on the railroad, canal, or turnpike
constructed or used by any such corporation, and on the real and per-
sonal property in which said capital stock shall be invested, and which
shall be used and occupied by any such company in accordance with

the provisions of its charter and the laws of this state in the construction or use of such railroad, canal, or turnpike."

It is clear that the petitioner's shares of stock were never taxed in Michigan at all, and there is no double taxation in this case within the meaning of the General Statutes. What is called a tax in Michigan is merely a fixed percentage upon the capital stock of all railroad, canal, and turnpike corporations, without any reference to the value of their shares or property. The petitioner, as a stockholder, has an interest in the accumulated earnings of the corporation, the increase in the value of its property, and any gratuities it may have received. The tax in Michigan is not a tax upon his property as a stockholder. Nay, it is not a tax at all, but rather a sum paid in lieu of a tax. It does not vary with the value of the stock, but has the character of a bonus paid by the corporation for its franchises and for the privilege of exemption from taxation. *Savings Bank* v. *Nashua*, 46 N. H. 399.

In *Van Allen* v. *Assessors*, 3 Wall. 583, 584, the court say,—" But in addition to this view, the tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal, and, within the powers conferred upon it by the charter and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. A striking exemplification may be seen in the case of the *Queen* v. *Arnoud*, 9 Adol. & Ellis, N. S., 806. The question related to the registry of a ship owned by a corporation. Lord DENMAN observed,—' It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested, in one sense, in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the stockholders.' The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of its shares, and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest on property, held by the shareholder like any other property that may belong to him."

*Smith* v. *Exeter* is not in point. In that case, all the property of the corporation paid a full tax in Illinois. Besides, the case was so slightly considered by the court that the decision was based upon the Comp. Laws of 1853, instead of the act of June, 1853, under which the case arose.

In this case, the petitioner's claim of double taxation is absurd. No tax upon his interest in the corporation was levied in Michigan. Here he is only taxed for the actual value of his shares, subject to the specific tax upon the corporation in Michigan and the tax here, and taking both into account in estimating such value. So far as the specific

tax tends to lessen his receipts and thereby diminish the value of his shares, he has received the full benefit of it in their appraisal. Both the letter and the spirit of our law require him to pay here this just and equal tax upon the actual value of his shares; and the statutes should not be wrested from their plain meaning, to enable him to escape the burdens of taxation upon the plea that the corporation has paid the mere pittance imposed upon it by the state of Michigan for the purpose of enticing capital there to escape taxation.

SARGENT, C. J.  No question is raised but that the quotations from the statutes of the state of Michigan, by the counsel upon both sides, are correctly cited.

From these it appears that this stock is taxed in the state of Michigan, under the laws of that state, paying a specific tax of three fourths of one per cent. upon all its capital stock paid in, including two millions of dollars purchase-money paid to the state, and also upon all loans made to said company for the purpose of constructing its road, or purchasing, constructing, chartering, or hiring steamboats; and it is provided that this specific tax shall be in full for all taxes, charges, or exactions, by virtue of any law of the state.

This stock is in that way once taxed in Michigan.  If it was owned in the state of Michigan, it clearly could not be taxed again to such stockholder in that state.  The rate of taxation being three fourths of one per cent. on the whole amount invested in the railroad, whether paid to the state, or for construction, or for steamboats, &c., whether represented by capital stock, or bonds, or debts of any kind, regardless of fluctuations and of depreciations in the market value of the stock, would probably be fully equal to the average rate of taxation in that state, or in our own, from the year 1840 to 1863.

But it is claimed that sec. 5, par. 3, ch. 49; General Statutes, in terms, requires that this stock be taxed in this state to the individuals owning the same, because the stock has not been taxed to them " by the towns where such corporations are located."  But in this case the specific tax is, by special provision of the statute of Michigan, to be " in lieu of all state, county, township, or other taxes in this state, on the capital stock of said corporations, and on the railroad, canal, or turnpike, constructed or used by any such corporation, and on the real and personal property in which said capital stock shall be invested," &c.

This corporation pays a tax on all its capital expended, whether represented by the shares of stock, or the debts of the corporation, and this tax is to be in lieu of all other taxation.  If this plaintiff owned bank stock in the state of Michigan, and the stock was all taxed in that state in the town where said bank is located, and, though taxed to the individual stockholders, the bank should pay all such taxes before declaring dividends, then he should not be taxed again upon the same stock in this state.  But a railroad is not generally located in any one town, for the purposes of taxation, as a bank is, but is taxed by the state, as in this case; and when that state tax is declared to be in lieu

of all other taxes, whether imposed by the towns, or in any other way, it is thus made a substitute for such town taxes, which would excuse the stockholder in that state from any town tax on such stock.

And the question is, whether this substitute for the town taxes comes within the spirit of our statute, and answers the requirement of our law. It is held, substantially, that it does so, in *Smith* v. *Exeter*, 37 N. H. 556. But if there were any doubt upon that point, sec. 7 of the same chapter would seem to settle the matter, which provides that "no statute provision shall be so construed as to subject any stock to double taxation;"—and see *Savings Bank* v. *Nashua*, 46 N. H. 389, and *Savings Bank* v. *Portsmouth*, 52 N. H. 17. If there could be any doubt as to the construction of sec. 5, after the decision in *Smith* v. *Exeter*, *supra*, it would seem to be removed by the provision of sec. 7, ch. 49, General Statutes.

But it is suggested that this three fourths of one per cent. is not to be considered as a tax, but rather a bonus, or royalty, paid to the state for the privilege of constructing and operating a railroad in that state. If this were so, and in consequence of this bonus paid to the state it was the real understanding that the property was to be exempted from all taxation in that state, then the stock should be taxed here. But if the property is really taxed there, and all of it is thus taxed, then it should not be taxed again. By the charter of this corporation, granted in 1846, it was required to pay a certain " specific tax to the state, and in consideration thereof the property and effects of the company were to be exempt from all and any tax  *  *  by virtue of any law of this state." This was a provision that the property, by paying one tax, should be exempt from all other taxes. But by the act of 1855 (see Compiled Statutes of 1872), it was provided that said specific tax to the state " shall be in lieu of all " other taxes, or a substitute for all other taxes on the capital stock of said corporation, and upon the railroad constructed or used by the corporation.

But we have already seen that this tax paid to the state upon all the capital expended in the construction or purchase of the roads, whether represented by the capital stock, or bonds, or other indebtedness of the company, amounts to a tax as high as the average rate of taxation upon other property in that state or this, from 1840 up to the time of the war; that it was in substance and in fact a tax, and not a bonus or royalty, and was intended to be, so far as we can see, a fair assessment upon the property of the corporation, including its capital stock. This being so, we cannot doubt that this tax should be abated, upon the ground that to tax it again here in this way would be a double taxation of the property.

*Tax abated.*